IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRESTON TATE, *et al.*,           *

     Plaintiffs,              *

     v.                       *

                               Civil Action No. RDB-21-02726

AMERICAN GENERAL LIFE          *
INSURANCE COMPANY,
                                  *

     Defendant.               *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This insurance coverage dispute turns on the scope of an insurer's obligation to pay death benefits under three multimillion-dollar life insurance policies. In 1999, Plaintiffs Creston Tate ("Tate") and the 1999 Tate Family Irrevocable Trust (the "Trust") purchased three policies from Defendant, the American General Life Insurance Company ("American General"), based on what they contend were assurances that the policies would provide coverage for the remainder of Creston Tate's life. (Compl. ¶ 3, ECF No. 1.) In 2019, Plaintiffs allege that American General informed Tate and his family that the policies would terminate at a fixed maturity date "around the time he reaches his 100th birthday, leaving him uninsured and his beneficiaries without the promised death benefits upon his passing." (*Id.* ¶ 3.) In 2021, Plaintiffs filed the operative eight count Complaint, bringing claims for breach of contract, violations of the covenant of good faith, negligent and fraudulent misrepresentation, declaratory relief, unjust enrichment, rescission, and reformation. (*See* Compl. ¶¶ 47–116; *accord* Pl.'s Resp. Opp. Mot. Dismiss 2–3, ECF No. 29-1.)

Now pending is American General's Motion to Dismiss for Failure to State a Claim. (ECF No. 21.) In support of its dispositive motion, American General argues that the Policies at issue in this litigation expressly terminate upon a fixed Maturity Date of September 25, 2028. (Def.'s Mem. Supp. Mot. Dismiss 1, ECF No. 21-1; Def.'s Repl. Supp. Mot. Dismiss 1, ECF No. 32.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, American General's Motion to Dismiss for Failure to State a Claim (ECF No. 21) is **GRANTED** in part and **DENIED** in part. Specifically, American General's motion is granted with respect to Count II, alleging violations of the covenant of good faith, Count III, alleging negligent misrepresentation, and Count IV, alleging fraudulent misrepresentation. This motion is denied with respect to the remaining counts, Counts I, V, VI, VII, and VIII.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The following facts are reviewed as alleged in Plaintiffs' operative Complaint and incorporated documents. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (holding that courts may consider a document incorporated into the complaint by reference).

Plaintiff Creston G. Tate ("Tate" or "Creston") was born on July 24, 1927 and has lived in Maryland for his entire life. (Compl. ¶¶ 5, 12.) Creston Tate married his longtime partner Betty Jane in December 1949, and together they raised three children, who went on

to have eight grandchildren and two great-grandchildren. (*Id.* ¶¶ 13–15.) Betty Jane Tate passed away in November 2013, after the Tates had been married for 64 years. (*Id.* ¶¶ 16–17.) Creston Tate turns 95 this year. (Mem. Supp. 7.)

In the late 1990s, Creston and Betty Jane Tate decided to develop a "tax and estate planning strategy" to provide for the health and well-being of their children, and the education of their grandchildren and great-grandchildren. (*Id.* ¶ 19.) Plaintiffs allege that the Tates were approached by agents of Defendant, the American General Insurance Company ("American General"), who advertised "several . . . permanent universal life insurance policies that would insure them for life, so long as they paid the necessary premiums to keep the policies in force." (*Id.* ¶¶ 21, 22, 24–25.) On or about October 13, 1999, the Tates formed the 1999 Tate Family Irrevocable Trust (the "Trust"), and designated Creston Tate's brother, Atwood Tate, as the sole Trustee. (*Id.* ¶ 23.) Based on American General's representations, (*id.* ¶¶ 26, 31), the Trust applied for and purchased three American General policies, numbered A10177218L, A10177219L, and A1017720L (the "Policies"), (*id.* ¶¶ 27.)

Plaintiffs claim that American General advertised these Policies as "second-to-die permanent universal life insurance policies," intended to guarantee their death benefits upon the passing of the last surviving Tate spouse as long as all premiums were paid. (*Id.* ¶¶ 23–29.) The Policies defined their death benefits as a face value of $10,000,000.00 and the return of approximately $24,000,000.00 in premiums, which would be payable upon the passing of the last to die of Creston and Betty Jane Tate. (*Id.* ¶¶ 27–28.) All three Policies provide that American General "will pay the death benefit proceeds to the designated beneficiary if the last surviving Contingent Insured dies prior to the Maturity Date and while this policy is in force."

(Policy No. A10177218L at 1, 8, ECF No. 1-2; Policy No. A10177219L at 1, 8, ECF No. 1-3; Policy No. A10177220L at 1, 8, ECF No. 1-3.)[1] Each Policy expressly lists a Maturity Date of September 25, 2028, and provides that its insurance coverage will terminate upon maturity. (Compl. ¶ 42; *see* Policy No. A10177218L at 12–13, 19; Policy No. A10177219L at 12–13, 19; Policy No. A10177220L at 12–13, 19.) However, the Policies' definition of Last Surviving Contingent Insured provides, unconditionally, that "[p]ayment of a death benefit under this policy will be made upon the death of the last survivor of the Contingent Insureds," and contains no reference to the Maturity Date. (Policy No. A10177218L at 7; Policy No. A10177219L at 7; Policy No. A10177220L at 7.)

According to the Complaint, the Tates paid over $37,000,000.00 in premiums over the life of the Policies with the understanding that they would be covered until their passing. (*Id.* ¶ 32.) However, on August 29, 2019, American General informed the Trust that Policy Nos. A10177218L and A10177219L would mature on September 25, 2025, and that Policy No. A10177220L would mature on July 25, 2049. (*Id.* ¶¶ 34, 37 44; *see also* August 2019 Letters 1–3, ECF No. 1-5.) In each letter, American General noted that the Tates had not purchased a Maturity Extension Rider upon issuance of each Policy, as necessary to extend coverage. (Compl. ¶ 37; *see also* August 2019 Letters 1–3.) Following communication with counsel for the Tates, American General clarified on April 15, 2020, that the Maturity Date was September 25, 2028, and refused to extend it further. (Compl. ¶ 45; Denial Letter 1–3, ECF No. 1-8.)

---

[1] The Policies have been incorporated into the Complaint by reference, and are integral to the Plaintiffs' allegations. Accordingly, they are appropriate to consider at this stage in the litigation. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). As the Policies are worded identically, they will be referred to collectively as "American General Policies" when cited in tandem through the remainder of this opinion.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted).

To survive a motion under Fed. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations articulated in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, in evaluating American General's Motion to Dismiss, this Court will consider the Policy and related exhibits, which were attached to Plaintiffs' Complaint and explicitly incorporated into the Complaint by reference. (*See, e.g.*, Policy No. A10177218L, ECF No. 1-2; Policy No. A10177219L, ECF No. 1-3; Policy No. A10177220L, ECF No. 1-4; August 2019 Letters, ECF No. 1-5; Sample Policy, ECF No. 1-6; Denial Letter, ECF No. 1-8.)

## ANALYSIS

The central issues in this case are whether American General may terminate the Policies prior to the death of Creston Tate—and whether American General induced the Tates to form the Trust and sign the Policies by assuring the Tates that they would be permanently insured. In the operative Complaint, Plaintiffs bring claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), negligent misrepresentation (Count III), fraudulent/intentional misrepresentation (Count IV), unjust enrichment (Count V),

declaratory relief (Count VI), reformation (Count VII), and rescission (Count VIII). (Compl. ¶¶ 47–116.) Among other relief, Plaintiffs seek compensatory and punitive monetary damages, a declaratory judgment and accompanying injunction, and reformation or rescission of the Policies. (Compl. 19–20.) For the reasons that follow, American General's Motion to Dismiss (ECF No. 21) is hereby **GRANTED** in part and **DENIED** in part.[2] Specifically, this motion is granted with respect to Counts II, III, IV. This motion is denied with respect to the remaining counts, Counts I, V, VI, VII, and VIII.

## I.      Breach of Contract (Count I)

In Count I, Plaintiffs allege that "[t]he Policies were intended to, and by their terms do, provide permanent coverage for the lives of the Tates," and that American General breached this obligation by insisting that the policies would expire at a fixed Maturity Date. (Compl. ¶¶ 20–22, 37, 47–59.) Under Maryland law, the elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 345 (2011)). American General challenges the first two elements of this claim, arguing that it is under no

---

[2] American General argues that Creston Tate lacks standing to sue, as he is neither the owner nor the beneficiary of the Policies. (Mem. Supp. 6.) However, in cases involving multiple plaintiffs, "the Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. Forum for Acad. & Inst'l Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)); *accord Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650–51 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."). The 1999 Tate Family Irrevocable Trust is also a plaintiff in this action. (Compl. ¶ 6.) As the holder of the Policies, the Trust has standing to assert claims for breach of contract, declaratory judgment, unjust enrichment, and equitable relief. While the Trust's standing to assert negligent and fraudulent misrepresentation claims is questionable at best, it is unnecessary to address this issue, as those claims are subject to dismissal.

obligation to provide coverage past the Maturity Date listed on the Policies, and that it cannot have breached its obligation to provide coverage while Creston Tate is still alive.

The interpretation of a contract is "ordinarily a question of law for the court," *Grimes v. Gouldmann*, 232 Md. App. 230, 235 (2017), as is the question of whether contract terms are ambiguous, *Calomiris v. Woods*, 353 Md. 425, 434 (1999). In conducting this inquiry, a court's interpretation of a contract is generally "limited to the four corners of the agreement." *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660 (2006). When interpreting a contract, courts determine "what a reasonable person in the position of the parties would have meant at the time it was effectuated." *General Motors Acceptance v. Daniels*, 303 Md. 254, 261 (1985). To this end, the language of disputed contractual provisions must be read "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and 'the facts and circumstances of the parties at the time of execution.'" *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 394 (2019) (quoting *Ocean Petroleum Co. v. Yanek*, 416 Md. 74, 88 (2010)). Nevertheless, it is "improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous." *Calomiris*, 353 Md. at 445 (citing *Canaras v. Lift Truck Services*, 272 Md. 337, 350 (1974)). "[C]ourts should avoid interpreting contracts so as to nullify their express terms." *Id.* at 441–42 (citing *State Hwy v. Bramble*, 351 Md. 226, 237 (1998)).

First, the parties dispute the scope of coverage under the Policies. American General argues that the Policies only provide coverage before a fixed Maturity Date. (Mem. Supp. 6–7.) Plaintiffs counter that the Policies were intended to be permanent, (Resp. Opp. 11–12), and that "there is, at least, an ambiguity in these policies regarding the permanent nature of

the insurance provided," (*id.* at 15–16). "Ambiguity arises when a term of a contract, as viewed in the context of the entire contract and from the perspective of a reasonable person in the position of the parties, is susceptible of more than one meaning." *Impac Mortg. Holdings, Inc. v. Timm*, 474 Md. 495, 507 (2021). "[W]here contractual language is ambiguous, extrinsic evidence is admissible to show the intention of the parties." *Truck Ins. Exch. v. Marks Rentals, Inc.*, 288 Md. 428, 433 (1980); *see also Pacific Indem., Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 389 (1985) ("Construction of the contract by the parties to it before the controversy arises is an important aid to interpretation of uncertain terms"). As contract terms are interpreted in context, "a term which is clear in one context may be ambiguous in another." *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 394 (2019) (quoting *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 508 (1995)).

Several clauses support American General's reading of the Policies. As an initial matter, each policy includes an express Maturity Date of September 25, 2028. (Am. Gen. Policies 3.) The first page of each Policy provides that American General will only pay a claim submitted before that Maturity Date:

> WE WILL PAY THE DEATH BENEFIT PROCEEDS to the designated Beneficiary if the last surviving Contingent Insured named on page 3 dies **prior to the Maturity Date** and while this policy is in force. Payment will be made after we receive due proof of the death of both Contingent Insureds and will be subject to the terms of this policy.

(*Id.* at 1 (emphasis added).) The cover page also provides for payment of the remaining Cash Surrender Value if the Tates are alive on that date. (*Id.*) The sections entitled "Death Benefit Proceeds" reinforces this view, guaranteeing that American General will pay death benefits "[i]f both Contingent Insureds die prior to the Maturity date and while this policy is in force."

(*Id.* at 8.) Finally, additional provisions indicate that each policy "is guaranteed to remain in force . . . until Maturity" provided premiums are paid, (*id.* at 12–13), and that each policy will terminate if "the policy matures," (*id.* at 19). Collectively, these clauses suggest that the Policies terminate on September 25, 2028—and that the Trust will receive the Cash Surrender Value rather than the Death Benefit Proceeds if the Tates are alive on that date.

However, the Policies' definition of Last Surviving Contingent Insured may perhaps conflict with this language, providing only that the "[p]ayment of a death benefit under this policy will be made upon the death of the last survivor of the Contingent Insureds," with no reference to the Maturity Date. (Compl. ¶ 53; Am. Gen. Policies 7.) Viewed in the light most favorable to the Plaintiffs, this "unconditional language" suggests that the Policies were intended to guarantee coverage upon the passing of the second Tate as long as the Trust complies with its contractual obligations. (Resp. Opp. 15–16.) Alternatively, the discrepancy between these provisions could indicate drafting errors in reducing the parties' intentions to writing, as Plaintiffs elsewhere allege. (*See* Compl. ¶¶ 106–08 (alleging mutual mistake).) In either case, these competing interpretations conflict with American General's claim that the Policies expire upon the listed Maturity Dates and suggest that the scope of the Policies' coverage may be ambiguous.[3] As this Court must view Plaintiffs' plausible allegations as true, this ambiguity "is not susceptible of resolution under a motion to dismiss for failure to state a claim." *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378 (D. Md. 2011) (Hollander,

---

[3] Notably, American General provided four inconsistent Maturity Dates in its communications with the Plaintiffs—September 25, 2025; September 25, 2028; October 28, 2036; and July 25, 2049. (*See* Compl. ¶¶ 34–46.) These inconsistencies reinforce the need for extrinsic evidence to determine the proper interpretation of the Policies.

J.) (quoting *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972)). Discovery will be necessary to determine the proper interpretation of these provisions. *Marks Rentals*, 288 Md. at 433.

Second, Plaintiffs allege that American General breached the Policies by declaring that coverage would terminate on a fixed date irrespective of whether Creston Tate has passed. (Compl. ¶¶ 50–54.) This Court has previously set forth the elements that a plaintiff must plead to state the breach of a life insurance contract:

> To state a cause of action for breach of a life insurance contract, a petition must allege: (1) the existence and terms of the policy; (2) the right or interest entitling the plaintiff to sue; (3) performance or waiver of conditions precedent; (4) death of the insured; (5) the amount of the insurance; and (6) the fact that payment is due, but has not been made.

*Milbourne v. Conseco Servs., LLC*, 181 F. Supp. 2d 466, 469 (D. Md. 2002) (emphasis removed) (quoting *Giles v. American Family Life Ins. Co.*, 987 S.W.2d 490, 494 (Mo. App. 1999)). There is a fundamental problem with Plaintiffs' breach of contract claim: Creston Tate is alive. Until the death of the insured, payment is not due, and American General cannot presently be in breach under ordinary contract principles.

Nevertheless, Plaintiffs also allege an anticipatory breach of the Policies. (Compl. ¶ 54.) Plaintiffs note that they "do not claim that the insurance company has paid death benefits to the wrong beneficiary; they claim that the insurance company promised to provide permanent life insurance benefits, but now refuses to do so." (Resp. Opp. 13.) To establish an anticipatory breach of contract under Maryland law, a plaintiff must allege "a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract." *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 596 (D. Md. 2019) (Hollander, J.) (quoting *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, DKC-11-1948, 2014 WL

11

3865993, at *5 (D. Md. Aug. 5, 2014)). "[W]hen 'in anticipation of the time of performance one definitely and specifically refuses to do something which he is obligated to do, so that it amounts to a refusal to go on with the contract, it may be treated as a breach by anticipation, and the other party may, at his election, treat the contract as abandoned, and act accordingly.'" *Id.* (quoting *C. W. Blomquist & Co., Inc. v. Capital Area Realty Investors Corp.*, 270 Md. 486, 494 1973)).

Construing the ambiguity in the policies in the light most favorable to the Plaintiffs, American General's refusal to provide coverage for life could constitute an anticipatory breach of the insurer's coverage obligation. The Plaintiffs have alleged, and incorporated, three letters sent by American General in which the insurer affirmatively declared that the policies would terminate on September 25, 2025—three years before the listed Maturity Date on the Policies. (*See* Compl. ¶¶ 34–46; *see also* August 2019 Letters, ECF No. 1-5.) Additionally, when American General was contacted by Plaintiffs' counsel in March 2020, the insurer responded with a letter stating the listed Maturity Date of September 25, 2028 and refusing to provide Plaintiffs with "a guarantee that the policies will provide coverage for the remainder of Mr. Tate's life and will not terminate prior to Mr. Tate's passing." (April 15, 2020 Letter, ECF No. 1-8.) Plaintiffs' theory is that American General attempted to manipulate the Maturity Dates, and ultimately refused to provide coverage for life, in an attempt to avoid an insurance payout past age 100. (Compl. ¶¶ 36–38, 40, 48.) In support of this theory, Plaintiffs note that the insurance industry has become increasingly concerned with the number of Americans reaching and surpassing 100 years in age, (*id.* ¶ 48), and that the Tates' Joint Equal Age would reach 100 in 2025, around the early maturity date provided in the August 2019 Letters, (*id.* ¶ 36).

Accepting Plaintiffs' allegations as true, these communications could indicate a definite and specific refusal to provide coverage upon Tate's death should he reach 100 years of age. American General counters that its letters merely enforced the terms of the Agreement by declining to provide coverage past the Maturity Date of September 25, 2028. (Mem. Supp. 8.) If the Policies are construed in American General's favor, this argument may prove persuasive. However, if the ambiguity resolves in Plaintiffs' favor, and the Policies are read to provide coverage for life, American General's letters could be read as a "repudiation" of its obligation to provide permanent coverage. Discovery will reveal whether the Policies were intended to provide such coverage, and whether American General's letters constitute a repudiation of that obligation rather than a disagreement about the interpretation of a contractual provision. At this stage in the litigation, Plaintiffs have stated a plausible claim for an anticipatory breach of contract. Accordingly, American General's Motion to Dismiss (ECF No. 21) is **DENIED** as to Count I.

## II.  Covenant of Good Faith (Count II)

In Count II, Plaintiffs allege violations of the covenant of good faith and fair dealing. (Compl. ¶¶ 60–67.) "Maryland law recognizes an implied covenant of good faith and fair dealing in all negotiated contracts." *Eastern Shore Markets v. JD Assoc.,* 213 F.3d 175, 184 (4th Cir. 2000) (citing *Julian v. Christopher*, 320 Md. 1, 8 (Md. 1990); *Food Fair Stores v. Blumberg*, 234 Md. 521, 534 (1964)). "[T]he covenant of good faith and fair dealing does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract." *Id.* (quoting *Parker v. Columbia Bank*, 91 Md. App. 346, 366 (1992)). "Rather, the duty 'simply prohibits one party to a contract from acting in such a manner as to prevent the other party

from performing his obligations under the contract." *Id.* at 182–83 (quoting *Parker*, 91 Md. App. at 366). "Stated otherwise, under the covenant of good faith and fair dealing, a party impliedly promises to refrain from doing anything that will have the effect of injuring or frustrating the right of the other party to receive the fruits of the contract between them." *Clancy v. King*, 405 Md. 541, 571 (2008) (quoting *Eastern Shore*, 213 F.3d at 184).

Plaintiffs allege that American General breached the implied covenant of good faith by, "*inter alia*, manipulat[ing] and chang[ing] the maturity dates, as well as inform[ing] Plaintiffs that it will terminate the Policies, wrongfully and inequitably depriving Plaintiffs of the benefits of the Policies." (Compl. ¶ 63.) However, "Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing." *Swedish Civil Aviation Admin. v. Project Mgmt. Ents, Inc.*, 190 F. Supp. 2d 785, 793–94 (D. Md. 2002) (quoting *Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1997)); *accord Mt. Vernon Props., LLC v. Branch Banking & Tr. Co.*, 170 Md. App. 457, 472 (2006) ("A breach of the implied duty of good faith and fair dealing is better viewed as an element of . . . breach of contract, than as a stand-alone cause of action."); *CapitalSource Fin. v. Pittsfield Weaving Co., Inc.*, 571 F. Supp. 2d 668, 673 (D. Md. 2006) ("The *Eastern Shore* court did not recognize a separate cause of action for the breach of an implied duty of good faith and fair dealing."). As Count I plausibly states a claim for breach of contract, Plaintiffs' allegations of bad faith may "be pursued under [their] breach of contract claim," but not as a standalone, alternative cause of action. *Magnetti v. Univ. of Md.*, 171 Md. App. 279, 285 n.3 (2006). Accordingly, American General's Motion to Dismiss (ECF No. 21) is hereby **GRANTED** as to Count II.

### III.   Negligent and Fraudulent Misrepresentation (Counts III, IV)

Counts III and IV bring claims for negligent and fraudulent misrepresentation, alleging that American General misled the Tates to believe "that the Policies constituted permanent life insurance that would provide the Tates coverage for life, and guarantee payment of a death benefit to Plaintiffs upon the death of the last surviving spouse." (Compl. ¶¶ 69, 80.) Plaintiffs claim that they applied for and purchased the American General Policies in reliance on these putative misrepresentations, and that they did not discover these representations until 2019. (Compl. ¶¶ 73, 84.) American General contends that these claims are barred by Maryland's applicable three-year statute of limitations, and that Plaintiffs' negligent misrepresentation claim fails for lack of duty. (Mem. Supp. 9–11.)

To state a claim for negligent misrepresentation, Plaintiffs must allege that:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Arvon v. Liberty Mut. Fire Ins. Co.*, No. BPG-17-2022, 2019 WL 4243035, at *4 (D. Md. Sept. 6, 2019), *aff'd*, No. 20-1249, 2021 WL 3401258 (4th Cir. Aug. 4, 2021. Similarly, to state a claim for fraudulent misrepresentation, Plaintiffs must allege that:

(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*White v. Kennedy Krieger Inst., Inc.*, 221 Md. App. 601, 635 (2015) (quoting *Hoffman v. Stamper*, 385 Md. 1, 16 (2005)). "Fraud claims differ only in that they require the defendant to know the

15

falsity of the statement, or to have made the statement with such reckless disregard for the truth as to impute knowledge." *Est. of Adams v. Continental Ins. Co.*, 233 Md. App. 1, 25–26 (2017) (citing *Univ. Nursing Home, Inc. v. R.B. Brown & Assocs., Inc.*, 67 Md. App. 48, 61 (1986)).

These claims are untimely. In Maryland, a civil action must "be filed within three years of the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-101. "In determining when an action accrues, Maryland courts [employ] the discovery rule." *Est. of Adams*, 233 Md. App. at 25. Accordingly, "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631, 636 (1981). "The concept of 'inquiry notice' controls when limitations begin to run." *Est. of Adams*, 233 Md. App. at 25. A plaintiff is charged with inquiry notice when the plaintiff "has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong." *Id.* (quoting *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 446 (2000)); *see also Poffenberger*, 290 Md. at 637 ("[W]e determine that the discovery rule contemplates actual knowledge that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry.").

Plaintiffs argue that they did not discover the putative misrepresentations until 2019. Plaintiffs repeatedly allege that they were assured that the Policies would provide coverage for life, (Compl. ¶¶ 38–40), and that they did not discover American General's misrepresentations until August 29, 2019, when, "for the first time, [American General] notified Plaintiffs that coverage will cease beyond age 100 because the Tates did not purportedly elect a Maturity Extension Rider ('MER') at policy issuance," (*id.* ¶ 37). American General counters that the

Policies placed the Plaintiffs on inquiry notice in 1999 by explicitly and prominently disclosing the Maturity Date. (Mem. Supp. 10.) Accordingly, American General asserts that "[Plaintiffs'] respective claims accrued then and should have been brought within three years (in 2002)." (*Id.* at 11.) American General is correct as a matter of law.

In *Ruddy v. Equitable Life Assurance Society*, No. DKC 00-70, 2000 WL 964770 (D. Md. June 20, 2000), plaintiff Joseph C. Ruddy, Jr., purchased a $1,000,000.00 life insurance policy after Equitable sales agents assured him that the policy included a "vanishing premium" clause, under which he would be relieved of his obligation to pay premiums after paying $350/month for ten years. *Id.* at *1. Between 1992 and 1995, Equitable demanded increased payments of $375/month, and eventually requested a monthly payment of $1,293 to avoid termination. *Id.* at *2. After an internal investigation, the policy terminated in 1996. *Id.* Exactly three years later, Ruddy filed suit, bringing five tort claims "premised on the alleged misrepresentations by the Equitable agent, made prior to the purchase of the whole life insurance policy, that a premium of $350 per month for ten years would be sufficient to sustain the policy and cause the premium to 'vanish.'" *Id.* at *3. Judge Chasanow of this Court concluded that Ruddy's tort claims were untimely, as the text of the policy imposed a premium of $1,408.37/month and included no vanishing clause. *Id.* "Thus, the policy itself, which contradicted and/or failed to incorporate the alleged representations regarding vanishing premiums, should have provoked inquiry by Plaintiff." *Id.*

Here, as in *Ruddy*, the language of the Policies placed Plaintiffs on inquiry notice of the putative misrepresentations. Plaintiffs allege that they did not have actual notice of American General's misrepresentations until they received the defendant's communications in August

2019. (Compl. ¶ 37.) This allegation must be taken as true at the motion to dismiss stage. However, the limitations period runs from the time a plaintiff has *inquiry* notice, not *actual* notice, of their claims. *Est. of Adams*, 233 Md. App. at 25. All three Policies contain an express Maturity Date of September 25, 2018, and repeatedly provide that the policies terminate following maturity. (Am. Gen. Policies 3, 8, 12–13, 19). Additionally, the Maturity Date is featured prominently in the first paragraph of the Policies' first page, which provides that American General will only pay a death benefit "if the last surviving Contingent Insured named on page 3 dies prior to the Maturity Date and while this policy is in force." (*Id.* at 1.) This language flatly contradicts the alleged assurances of American General's sales agents that the Policies provide permanent life insurance. It "should have provoked inquiry" by Plaintiffs, *Ruddy*, 2000 WL 964770, at *3, who insist that they "would not have agreed to purchase and pay for the Policies but for [American General's] representations." (Compl. ¶ 73.) Any reasonable person who specifically bargained for a permanent life insurance policy would have inquired as to why the policy they were issued contains express, prominent language suggesting that it terminates at a fixed date.

Accordingly, even assuming the Plaintiffs did not actually discover the alleged wrongs until 2019, they were on inquiry notice of the putative misrepresentations as early as September 25, 1999, when they received the Policies from American General. (Compl. ¶¶ 19–24; Am. Gen. Policies 3 (listing date of issue).)[4] As American General aptly notes, "[t]he pleaded facts

---

[4] As both parties acknowledge, the communications between Plaintiffs and American General in 2019 cannot serve as a predicate for Plaintiffs' misrepresentation claims, as they occurred two decades after Plaintiffs purchased the Policies and cannot have possibly induced Plaintiffs' reliance. (Mem. Supp. 12; Resp. Opp. 20.) Excerpts of American General's website obtained in 2022 are similarly irrelevant to this inquiry. (Compl. ¶ 20; American General Website, ECF No. 1-1.)

establish that the Trust had twenty days to review and return the Policies if the Trust was not satisfied with their terms . . . and it had an additional *twenty years* to raise concerns about the Policies' clearly stated Maturity Date." (Repl. Supp. 19 (emphasis in original).) Under Maryland law, the statute of limitations for these tort claims ran on September 25, 2002, exactly three years after the Plaintiffs received the finalized Policies and were placed on inquiry notice of their terms. Md. Code Ann, Cts. & Jud. Proc. § 5-101; *Est. of Adams*, 233 Md. App. at 25. As Plaintiffs' negligent and fraudulent misrepresentation claims are time-barred, American General's Motion to Dismiss (ECF No. 21) is hereby **GRANTED** as to Counts III and IV.

## IV.     Unjust Enrichment (Count V)

In Count V, Plaintiffs plead an unjust enrichment claim as an alternative to their breach of contract claim (Compl. ¶¶ 90–96.) As Judge Hollander of this Court has previously noted, "an unjust enrichment claim deprives the defendant of benefits that would be inequitable for the defendant to retain." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 560 (D. Md. 2019) (Hollander, J.) (citation omitted). Under Maryland law, a claim for unjust enrichment requires three elements:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007) (quoting *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151–52 (2000)). Accordingly, "a successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even

though the plaintiff may have suffered no demonstrable losses.'" *Id.* at 295–96 (quoting *Dep't of Hous. & Cmty. Dev. v. Mullen*, 165 Md. App. 624, 659 (2005), *cert denied.*, 391 Md. 579 (2006)). The Complaint plausibly pleads all three elements of this claim: Plaintiffs allege that they have paid American General approximately $37,000,000.00 in premiums over the lifetime of the Policies, (Compl. ¶ 92), that American General voluntarily accepted these premium payments, (*id.* ¶ 93), and that American General "has not, and does not intend to, perform any of the services for which it was paid by Plaintiffs," (*id.* ¶ 94–95.)

In response, American General argues that the existence of the Policies preclude an unjust enrichment claim. (Mem. Supp. 9; Repl. Supp. 11.) "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998) (citing *MTA v. Granite Const. Co.*, 57 Md. App. 766, 776 (1984)). As Judge Hollander recently noted in *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576 (D. Md. 2019) (Hollander, J.):

> Unjust enrichment is a quasi-contractual cause of action that is a remedy 'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.' 'The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'

401 F. Supp. 3d at 597 (quoting *Cty. Comm'rs of Caroline Cty. v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96–97 (2000)) (citations omitted). Here, there is no dispute that the Policies are enforceable contracts, and that the Policies concern the same subject matter as Plaintiffs' unjust enrichment claim. Plaintiffs allege that it would be inequitable for American General to retain the $37,000,000.00 in life insurance premiums paid by the Plaintiffs if Creston Tate dies

after the Maturity Date and American General refuses to pay the Trust. This claim turns on Plaintiffs' obligation to pay premiums and American General's reciprocal obligation to pay benefits, each of which are governed by the express terms of the Policies.

However, the Plaintiffs have made a plausible claim that the Policies are ambiguous, and American General's obligations are disputed. This Court has recognized that an unjust enrichment claim may proceed as an alternative to a breach of contract claim "where there is a dispute as to the existence of a contract as a whole, the subject of the contract, and even the terms of the agreement." *John M. Floyd & Assocs., Inc. v. Howard Bank*, No. RDB-18-2887, 2019 WL 1755968, at *2 (D. Md. Apr. 18, 2019) (citing *West v. Koehler*, No. RDB-11-3051, 2012 WL 868657, at *6 (D. Md. Mar. 13, 2012)). Although neither party challenges the existence of the Policies or their subject matter, the parties dispute when those Policies may terminate, and when American General must pay insurance benefits: Plaintiffs argue that the Policies provide permanent life insurance with guaranteed benefits upon the death of the second surviving Tate spouse, while American General contends that the policies terminate upon the Maturity Date on September 25, 2028. (*Compare* Compl. ¶ 50 ("The Policies were intended to, and by their terms do, provide permanent coverage for the life of the Tates."), *with* Mem. Supp. 7 ("The Policies' plain terms preclude recovery after the maturity date.").) As there is a dispute as to the terms of the Policies at issue, quasi-contractual claims may be brought in the alternative to Plaintiffs' breach of contract claim. Accordingly, American General's Motion to Dismiss (ECF No. 21) is **DENIED** as to Count V.

## V. Declaratory Relief (Count VI)

In Count VI, Plaintiffs seek a declaratory judgment to prevent American General from terminating the Policies prior to Tate's death. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, "a district court, in a case or controversy otherwise within its jurisdiction, 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting 28 U.S.C. § 2201(a)) (emphasis omitted). As the United States Court of Appeals for the Fourth Circuit observed in *Volvo Const. Equipment N.A., Inc. v. CLM Equipment Co., Inc.*, 386 F.3d 581 (4th Cir. 2004), courts must consider three factors when determining whether a declaratory judgment is appropriate:

> (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

386 F.3d at 592 (citing 28 U.S.C. § 2201; *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994)). Generally, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

Plaintiffs request a declaration that would clarify their rights under the Policies, including a declaration "(a) that [American General] cannot terminate the Policies and must provide coverage for the life of Mr. Tate; and (b) that [American General] cannot unilaterally issue adverse taxable distributions of cash value to Plaintiffs." (Compl. ¶ 101.) This case readily

satisfies all three predicates for a declaratory judgment claim. This Court has an independent basis for jurisdiction, as the value of the death benefits provided by the Policies exceeds $75,000.00, and there is complete diversity of citizenship between the parties. (Compl. ¶¶ 9–10.)[5] Additionally, the dispute regarding the proper interpretation of the Policies is "of sufficient immediacy and realty to warrant issuance of a declaratory judgment." 28 U.S.C. § 2201(a). Moreover, the Maryland appellate courts have recognized the important role of transparency and accuracy in life insurance transactions. *See Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 71 (2002) ("Purchasers of life insurance rely on their policies for serious purposes—to give them security, support their family after the death of the insured, pay estate taxes, achieve savings through the augmenting of guaranteed cash values, provide security to the financing of major business transactions, and others."). A declaratory judgment may be warranted in this case, as a declaration clarifying the extent of the coverage afforded by the Policies will provide the Plaintiffs with valuable certainty and security as Creston Tate continues to age, and the Trust continues to plan for the health, education, and well-being of the Tate children.

American General contends that the requested declaration should be dismissed as duplicative of Plaintiffs' breach of contract claim. "When declaratory relief would be duplicative of claims already alleged, dismissal is warranted." *Chevron U.S.C., Inc. v. Apex Oil Co., Inc.*, 113 F. Supp. 3d 807, 824 (D. Md. 2015) (quoting *Sharma v. OneWest Bank, FSB*, No. DKC 11-0834, 2011 WL 5167762, at \*6 (D. Md. Oct. 28, 2011)); *accord Harte-Hanks Direct*

---

[5] Specifically, Plaintiffs are citizens of Maryland, while American General is a corporation organized and existing under the laws of Texas, with its principal place of business in Houston, Texas. (Compl. ¶¶ 5–10.)

*Mktg./Balt., Inc. v. Varilease Tech. Fin. Grp., Inc.*, 229 F. Supp. 2d 505, 528 (D. Md. 2004). In support of this argument, Defendant cites this Court's opinion in *John M. Floyd & Associates, Inc. v. Howard Bank*, No. RDB-18-2887, 2019 WL 1755968 (D. Md. 2019). In *Floyd*, the plaintiff corporation sought a declaration that the defendant "is in breach of the [parties'] agreement and owes monetary damage to [the plaintiff]." 2019 WL 1755968, at *4. This Court dismissed that declaration as duplicative, observing that it was "not seeking to establish anything that the breach of contract claim will not address." *Id.*; *see also Geist v. Hispanic Information & Telecommunications Network, Inc.*, No. PX-16-3630, 2018 WL 1169084, at *7 (D. Md. 2018) ("[W]here the same conduct underlies claims for declaratory judgment and breach of contract, 'courts generally dismiss the declaratory judgment claim as duplicative in favor of 'the better or more effective remedy' of 'the underlying litigation itself.'" (quoting *Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 403 (E.D.N.Y. 2012))).

There is a crucial difference between this case and *Floyd*. Here, Plaintiffs seek a declaratory judgment to clarify American General's obligations under the Policies—not to declare that American General is presently in breach. In this manner, this declaratory judgment is a valid alternative to Plaintiffs' breach of contract claim, and may serve a useful purpose in expediting the resolution of this dispute. *See* Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). Discovery may ultimately reveal that the parties' communications in August 2019 and April 2020 constitute a difference in opinion regarding the proper interpretation of an ambiguous contractual provision rather than "a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract," as necessary to sustain a claim for

anticipatory breach. *Transamerica*, 401 F. Supp. 3d at 596. In such circumstances, a declaratory judgment could prove to be "the better or more effective remedy" than a breach of contract claim, and may be the preferred vehicle to clarify the proper interpretation of the Policies before Creston Tate's passing. Accordingly, American General's Motion to Dismiss (ECF No. 21) is hereby **DENIED** as to Count VI.[6]

## VI. Reformation and Rescission (Counts VII, VIII)

In Counts VII and VIII, Plaintiffs seek to either reform the policies to conform to their intent, or rescind the policies and return the premiums they have paid. (Compl. ¶¶ 104–116.) Reformation and rescission are equitable remedies available in extraordinary circumstances in a breach of contract action. *See Parker v. American Brokers Conduit*, 179 F. Supp. 3d 509, 521 (D. Md. 2016) ("Rescission, of course, is not a cause of action *per se*; it is an equitable remedy."). "'Reformation differs from rescission in that a reformed document remains in force and effect, but in a modified form,' so as to reflect the parties' true intent, while rescission 'involves voiding the [contract] *ab initio* and restoring the parties to their status prior to the [bargain].'" *Wiseman v. First Mariner Bank*, No. ELH-12-2423, 2013 WL 5375248, at \*16 (D. Md. Sep. 23, 2013) (citations omitted). Either claim must be established by clear and convincing evidence. *Id.* at \*17 (citing *Faller v. Faller*, 247 Md. 631, 636 (1967); *LaSalle Bank, N.A. v. Reeves*, 173 Md. App. 392, 412 (2007)).

---

[6] American General also contests Plaintiffs' request for a declaration "that [American General] cannot unilaterally issue adverse taxable distributions of cash value to Plaintiffs." (Compl. ¶ 101.) American General asserts that tax liability is not a cognizable injury, and that "any cash distributions would be payments permitted or required by the parties' contract." (Mem. Supp. 16.) However, Plaintiffs seek to clarify exactly what payments are "permitted or required" by the parties' contract— they do not claim damages based on prior tax payments. Accordingly, this Court declines to narrow the requested declaration at this early stage in the litigation.

Plaintiffs plead a plausible reformation claim. "Reformation . . . is only warranted when one of two circumstances exists: 'either there must be mutual mistake, or there must be fraud, duress, or inequitable conduct.'" *Jaguar Land Rover N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 650 (D. Md. 2010) (quoting *Md. Port Admin. v. John W. Brawner Contracting Co.*, 303 Md. 44, 59 (1985)); *see also Johnson v. Penn. Nat'l Mut. Cas. Ins. Co.*, 447 F. Supp. 372, 381 (D. Md. 2020). Plaintiffs plead both theories in the alternative. (Compl. ¶ 108.) As discussed above, Plaintiffs allege that American General induced them to purchase the Policies by representing "that they were purchasing and paying for permanent life insurance for the remainder of their lives, and that the death benefit would be paid to Plaintiffs upon the death of the last surviving spouse." (*Id.* ¶ 106; *see, e.g.*, *id.* ¶ 22 ("The Policies were marketed, sold, and represented to the Tates by AIG as permanent coverage that would insure the Tates for life."); *id.* ¶ 38 ("Plaintiffs were materially and specifically told that they would have coverage for life."); *id.* ¶ 39 ("[T]he Policies were sold as a form of permanent insurance.").) Plaintiffs allege in the alternative that these representations constitute inequitable conduct, (*id.* ¶ 106), or that American General intended to insure the Tates for life, suggesting that the final written Policies are the product of mutual mistake, (*id.* ¶ 107). Either theory is sufficient to sustain a reformation claim.

Plaintiffs have also stated a plausible rescission claim. In Maryland, "[w]here . . . there has been a material breach of a contract by one party, the other party has a right to rescind it." *Maslow v. Vanguri*, 168 Md. App. 298, 321 (2006) (quoting *Wash. Homes, Inc. v. Interstate Land Dev. Co., Inc.*, 281 Md. 712, 728 (1978)). "However, rescission will not be granted 'for casual or unimportant breaches, but only for a substantial breach tending to defeat the object of the

contract.'" *Id.* (quoting *Vincent v. Palmer*, 179 Md. 365, 373 (1941)). Accordingly, "rescission is permitted when 'the act failed to be performed [goes] to the root of the contract or . . . render[s] the performance of the rest of the contract a thing different in substance than what was contracted for.'" *Id.* (quoting *Traylor v. Grafton*, 273 Md. 649, 687 (1975)); *see also Barufaldi v. Ocean City, Chamber of Commerce, Inc.*, 196 Md. App. 1, 21–22 (2010) ("In order to justify an abandonment of [the contract] and the proper remedy growing out of it, . . . [t]he object of the contract must have been defeated or rendered unattainable." (quoting *Speed v. Bailey*, 153 Md. 655, 660–61 (1927)). Plaintiffs allege throughout the Complaint that they specifically contracted for life insurance that would cover the Tates for the duration of Creston Tate's life. (*See, e.g.*, Compl. ¶¶ 19–29.) If the Policies are ultimately read to provide permanent coverage, and if American General has repudiated this obligation, such an anticipatory breach would "defeat the object of the contract," *Maslow*, 168 Md. App. at 321, by depriving Plaintiffs of the specific benefit they bargained for.

The defendant's arguments against these Counts are premature. American General insists that no mistake or misrepresentation occurred, that it always intended to provide time-limited coverage, and that the equities do not favor reformation or rescission, as the Trust had ample time to examine the Policies and dispute their coverage terms. (Mem. Supp. 19, 21–22.) These arguments ask this Court to take the movant's allegations as true and are inapposite at this early stage in the litigation. A defendant's straightforward denials of the Complaint's plausible allegations are not sufficient to sustain a motion to dismiss. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) ("When ruling on a Rules 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the

Complaint.'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *see, e.g.*, *Lee v. Safeway, Inc.*, No. RDB-13-3476, 2014 WL 4926183, at \*12 (D. Md. Sep. 30, 2014) ("Even if Defendant disputes the [Plaintiffs' allegations], this Court must accept Plaintiffs' factual allegations as true at the motion to dismiss stage.").

Similarly, American General argues that equitable relief is inappropriate because Plaintiffs' other Counts demonstrate that they have an adequate remedy at law. (Mem. Supp. 21.) *Cf. O'Brien & Gere Engs., Inc. v. City of Salisbury*, 447 Md. 394, 406 (2016) ("The doctrine is well settled in this state that, where a party has a certain, complete, and adequate remedy at law, he cannot sue in equity." (quoting *Much v. Underwood*, 179 Md. 455, 459 (1941))). However, as Plaintiffs aptly note, "plaintiffs may plead claims for both legal and equitable relief, as equitable relief may become available if no adequate legal remedy remains." *Stanley v. Central Garden and Pet Corp.*, 891 F. Supp. 2d 757, 766 (D. Md. 2012); *see also* Fed. R. Civ. P. 8(d)(2) (authorizing plaintiffs to plead alternative theories "either in a single count or defense or in separate ones"). This Court therefore declines to foreclose equitable remedies at this early stage in the litigation. Should discovery reveal that the parties intended to contract for permanent life insurance, or that American General actively misrepresented the scope of the contract, monetary damages may be inadequate, and the equitable remedies of reformation or rescission may be superior forms of relief. Accordingly, American General's Motion to Dismiss (ECF No. 21) is **DENIED** as to Counts VII and VIII.

## CONCLUSION

For the foregoing reasons, American General's Motion to Dismiss (ECF No. 21) is hereby **GRANTED** in part and **DENIED** in part. Specifically, American General's Motion to Dismiss is granted as to Counts II, III, and IV, and denied as to all other Counts.

A separate Order follows.


Dated: September 13, 2022

_____/s/_____
Richard D. Bennett
United States Senior District Judge